NEW YORK INTER-URBAN WATER COMPANY, Respondent, *v.* CITY OF MOUNT VERNON, Appellant.

Second Department, December 6, 1918.

Municipal corporations — liability of city to water works corporation for expense of relocating water mains and hydrants necessitated by improvement of streets — action upon assumpsit — evidence — contract for reimbursement under section 81 of Transportation Corporations Law not continued by acts of parties — implied promise — quantum meruit.

As a general rule a water works corporation takes the risk of relocating water mains and hydrants in city streets and must make at its own cost such changes as the public convenience or security require.

In an action by a water works corporation, upon assumpsit, to recover for work and material in relocating certain water mains and hydrants in streets of the defendant necessitated by permanent improvement to said streets, the plaintiff alleged that the work was done and material furnished at the special instance and request of the defendant for an agreed price. Evidence examined, and *held,* insufficient to sustain such allegations.

A contract between the water corporation and the city under section 81 of the Transportation Corporations Law providing for reimbursement by the city for changes made by the water works corporation and being expressly limited to ten years was not extended so as to constitute a continuing legal obligation upon the city with respect to the claims in suit by the fact that for a time after its expiration the practical dealings of the parties with respect to reimbursement continued in accordance with the contract.

The plaintiff cannot, under the circumstances, rely upon the doctrine of implied promise.

Nor can a recovery be sustained on the theory of *quantum meruit.*

APPEAL by the defendant, City of Mount Vernon, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of Westchester on the 9th day of January, 1918, upon the decision of the court after a trial before the court without a jury.

*J. Henry Esser, Corporation Counsel,* for the appellant.

*Charles P. Blaney,* for the respondent.

Jenks, P. J.:

The plaintiff is a water works corporation; the defendant, a municipal corporation. At Trial Term the court without a jury gave full judgment for plaintiff upon a claim for its work and material in relocating certain water mains and hydrants of the plaintiff in certain streets of the defendant. The plaintiff theretofore had located such apparatus for its business of water supply to the defendant and its inhabitants. The relocations were required by changes made by the city in its permanent work in improvement of these streets.

The general rule of law is that the plaintiff took the risk of location, and must make, at plaintiff's cost, such changes as the public convenience or security required. (*Matter of Deering,* 93 N. Y. 361. See, too, *New Orleans Gas Co.* v. *Drainage Commission,* 197 U. S. 453; *Chicago, B. & Q. Railway* v. *Drainage Comrs.,* 200 id. 591; *Columbus Gas Light & Coke Co.* v. *City of Columbus,* 50 Ohio St. 65; 19 L. R. A. 510.) The claim of the plaintiff is in derogation of this general rule. The plaintiff declared upon assumpsit, and pleaded that the work and material was done and was furnished respectively at the special instance and request of the defendant, for an agreed price. The court found that in the seven instances specified in the period intervening September 15, 1914, and October 6, 1916, the plaintiff, to comply with the requirements of the defendant, at defendant's " special instance and request," did such work and furnished such material for sums of money declared reasonable, which the defendant agreed to pay to the plaintiff. I fail to discover any proof that justifies such finding. The court found that on December 7, 1898, the parties entered into a contract which provided *inter alia* that if the defendant should change the surface or establish a grade of any street wherein the plaintiff had laid a pipe line, which in consequence of such

change the plaintiff should be required to relay, then the
defendant would reimburse the plaintiff for the expense of
relocation. But the plaintiff could not stand upon this con-
tract. It was executed for general service by the plaintiff
as a water company and by defendant for water supply, as
authorized by section 81 of the Transportation Corporations
Law.* The said contract was expressly limited to ten years,
as prescribed by the said statute, and, therefore, terminated
in December, 1908. There is no proof that the parties ever
made or attempted to make the other contract contemplated
by that statute, or ever attempted to extend directly the
said contract of 1898, or any of its provisions. But the court
found that after the expiration of the said contract of 1898
the plaintiff, up to September 15, 1914, from time to time
made changes in the locations of its mains at the request of
the defendant, and in each instance was reimbursed for the
cost by the defendant. Therefore it is contended that the
plaintiff had a legal right to rely upon payment for the work
and material in suit. The contract was statutory, reduced
to writing, made under seal, and, as I have said, limited by
the statute to ten years. The fact that for a time after the
statutory and express expiration of such contract the practical
dealings of the parties with respect to reimbursement con-
tinued in accord with a provision of the contract, could not
perforce extend the contract or that provision so as to con-
stitute a continuing legal obligation upon the defendant with
respect to the claims in suit. (13 C. J. 626; *Hopedale Machine
Co.* v. *Entwistle,* 133 Mass. 443.) To hold the contrary is
also to hold that the statutory term, at least with respect
to such provision, can be nullified by the parties, and that
a provision of a contract that must expire in 1908 can thus
be continued as an obligation applicable to claims resisted
by the defendant that arose first in December, 1914, and
extended until October, 1916, because of a practice only for
a period that intervened December 7, 1908, and September
15, 1914. Whether such voluntary practical dealings of reim-

* See Gen. Laws, chap. 40 (Laws of 1890, chap. 566), § 81, as amd. by
Laws of 1896, chap. 678, and Laws of 1907, chap. 629; now Consol. Laws,
chap. 63 (Laws of 1909, chap. 219), § 81.— [REP.

bursement that obtained only in the said period, as to other claims, " might perhaps tend to establish a subsequent oral contract " as to them (provided the law authorized it [*Hopedale Machine Co.* v. *Entwistle, supra*]), is a question not germane to the claims in suit. I am of opinion that the plaintiff cannot stand upon the contract of 1898 or the said provision thereof.

The charter of the defendant (Laws of 1892, chap. 182, § 166) provides that no debt or liability which may become a charge against said city or corporation shall be created or contracted except by authority of the common council. There is no evidence that any contract was ever made or attempted to be made under this provision with respect to this work or material, or of any action by the common council that authorized the creation of any debt or liability therefor. The question of the power of that body in the premises, therefore, is not presented.

We have, then, no express contract as the foundation for the plaintiff's claim.

We must inquire whether there is any liability upon the defendant to be implied by law. The court, as I have said, found that the work was done and the materials were furnished at the special instance and request of the defendant, which agreed to pay for them. I cannot discover proof to justify this finding. Doubtless there is sufficient proof of requests for relocations, for the relocations were isolated and to be made only when the defendant's work in improvement of certain streets required relocations. Naturally there must have been a request or notice for any such relocation. But such a mere request was for the discharge of a duty cast upon the plaintiff by law, which also declared that the cost should be borne by the plaintiff. Such a request was not formative of an implied contract, as if A had requested a voluntary, not an obligatory, act by B, which when done in response by B might tend to constitute a contract. And such request to such end should not be construed so as to charge the defendant with the cost of the discharge of a duty which the law declares should be borne by the plaintiff. There was a stipulation as to certain facts read at trial which states in two instances that the defendant agreed to pay for the work

and materials, but that statement was withdrawn without protest, objection or exception. I can find no other proof that the defendant agreed to pay for the work or materials or to make reimbursement therefor. There was a letter read in evidence, written by the defendant's commissioner of public works, dated July 20, 1916, whereby he requested certain changes, and wherein he wrote, " Send bill in duplicate when completed." But on redirect examination he testified, " in that particular case " there was a *city* water line running from the city's well to the main of the water company, and that he expected the bill would be presented and paid for the work upon the pipe belonging to the city — the pipe did not " belong to the water company at all."

The plaintiff cannot rely upon the doctrine of implied promise. Dillon on Municipal Corporations (Vol. 2 [5th ed.], p. 1185), with citation of authorities, says: " Thus it is obvious that an implied promise cannot be raised against a corporation, where by its charter it can only contract in a prescribed way, except it be a promise for money received or property appropriated under the contract." I fail to find power, either express or implied, in the common council to contract that the defendant would reimburse the expenses of relocations, or to make the defendant liable therefor, in derogation to the general rule of law. Even if a promise, within the exceptions thus stated by Dillon, could be implied, the defendant neither made a promise for money received nor for property appropriated under the contract. The work was done and the material was furnished upon plaintiff's own property, for the plaintiff owned the pipes and hydrants. The work and materials secured plaintiff's use of its own apparatus in a business for profit derived from the supply of water. If, for example, the basis of this action was the *water* supplied to the city and its inhabitants after the expiration of the formal contract and in the absence of any contract, then the doctrine of implied contract might apply (*Harlem Gas Co.* v. *Mayor, etc.*, 33 N. Y. 309; Dillon Mun. Corp. [5th ed.] 1388, and notes), and recovery might be had as on *quantum meruit.* (*Rubin* v. *Cohen*, 129 App. Div. 395, citing *Shirk* v. *Brookfield*, 77 id. 295; *Northern Westchester L. Co.* v. *Village of Ossining*, 179 id. 135. See, too, Dillon Mun. Corp. [5th

ed.] 2229.)   The distinction is in the benefit received and accepted.   In the case at bar the water mains and the hydrants benefited the city in one sense of the word, but remotely, in that the water was supplied through them.   But in the eye of the law the benefit of the water mains and of the hydrants was that of the plaintiff.   The plaintiff owned them, and received payment for the water supplied through them; hence it was to its money interest that it should retain such apparatus located in the city and adapted to its business. The principle of implied liability is stated in the leading case of *McDonald* v. *Mayor* (68 N. Y. 28, 29).   (See, too, *Matter of Niland* v. *Bowron*, 193 N. Y. 185.)

The recovery cannot be sustained on the theory of *quantum meruit.*   That contention involves the proposition that the city " has enjoyed the benefit of the work performed   *   *   * when no statute forbids or limits its power to make a contract."   (*Kramrath* v. *City of Albany*, 127 N. Y. 582.)

If the plaintiff cannot enforce continuance of the practice of reimbursement, it but ceases to be relieved of a charge justly cast upon it by law.   If it be urged as a plea for fair dealing that when plaintiff entered upon its business it had the contract promise of reimbursement, and that cessation of the practice adds to its burden, it may be answered that it knew the express promise could exist but for ten years, and also that practical compensation may be found in the fact that after the expiration of the contract the plaintiff raised its water rates above those prescribed in that contract. The plaintiff, perhaps, presumed on a voluntary continuance of reimbursement that has been refused, perhaps on a legal obligation that does not exist.   On the other hand, there is no just reason why the money of the city should be paid out when not authorized by law, for the primary benefit of the business of the plaintiff.   " The law is not properly chargeable with the absurdity of implying an obligation to do that which it forbids."   (Ross, C. J., in *Edison Electric Co.* v. *City of Pasadena*, 178 Fed. Rep. 425, 431.)

As I have said, in one instance it appeared that the eight-inch pipe to the city well was owned by the defendant.   This item might present a somewhat different question, in that the work was done upon the property of the city.   But I

cannot ascertain that the work was included in the findings of the court.

The fifth finding of fact is amended by striking out the words therein " at the special instance and request of the defendant;" by inserting after the words " City of Mount Vernon," the words " and upon notice and request from the defendant," and by striking out all of the words after the word " dollars."

The sixth finding is likewise amended.

The seventh finding is likewise amended.

The eighth finding is likewise amended.

The ninth finding is amended by striking out the words " at the special instance and request of the defendant;" by inserting after the words " defendant's street " the words " and upon notice and request from the defendant," and by striking out all of the words after the word " dollars."

The tenth finding is amended by striking out after the words " September, 1916," the words " at the special instance and request of the defendant;" by inserting after the words " City of Mount Vernon " the words " made necessary by defendant's permanent work in and upon said street and upon notice and request from the defendant," and by striking out all of the words after the word " dollars."

The eleventh finding is amended by striking out the words " at the special instance and request of the defendant " after the words " October, 1916;" by inserting after the words " Mount Vernon " the words "made proper and necessary by the defendant's permanent work upon its streets and upon notice and request from the defendant," and by striking out all of the words after the word " dollars."

And by striking out all of the thirteenth finding and inserting in lieu thereof:

" *Thirteenth.* That the reasonable cost of said work, labor and material, including superintendence and the use of tools amounted to One thousand and forty-six and 39/100 dollars, which sum was demanded by the plaintiff prior to the commencement of this action and which the defendant refused to pay, and that the interest thereon from June 21, 1916, to the date of this decision amounts to Ninety-seven and 40/100 dollars."

And there should be stricken out all of the conclusions of law as contrary to law, and in place thereof is made the conclusion of law that there should be judgment for the defendant, but without costs.

THOMAS, MILLS, KELLY and JAYCOX, JJ., concurred.

Judgment reversed, without costs, in accordance with opinion. Order to be settled before the presiding justice.