PETER GILIGIAN *vs.* NEW ENGLAND TRUCK COMPANY.

Worcester.   September 26, 1928. — November 23, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Sale*, Conditional, What constitutes. *Payment*, By note. *Bills and Notes*, As payment, In renewal. *Evidence*, Presumptions and burden of proof. *Contract*, Construction, Performance and breach, Modification.

A corporation by an instrument in writing "leased" a motor truck "for twelve months" for a stated sum to one who agreed that "the balance [of the sum] shall be paid" in eleven notes of stated amounts, which should "not be construed as payment until the lessor receives payment in cash." The instrument contained the provision, "If, during the life of this lease, the lessor shall make repairs upon said truck, all bills for such repairs shall immediately fall within the provisions of this lease and must be paid by the lessee before the lessor is obligated to sell said truck to the lessee"; and also a provision whereby the "lessor" agreed to sell the truck to the lessee for $1 at the expiration of the lease, "if all the requirements thereof have been fulfilled." When all but the last note had been paid, by agreement of the parties, "six notes were given for different amounts, totalling the balance then due, and the old note was cancelled," and subsequently all these notes were paid. Repairs were made on the truck by the "lessor" during a period beginning subsequent to twelve months from the date of the instrument but before full payment of the renewal notes. Before the payment of all of the renewal notes, the "lessee" mortgaged the truck to one who afterwards foreclosed and took possession. The charges for repair not having been paid in full, the "lessor" then took possession and the mortgagee brought against it an action of tort for conversion, at the trial of which it was uncontradicted that the

renewal notes were given "in replacement of the old note and not in payment thereof." A verdict was ordered for the defendant. *Held,* that

(1) Although the contract was in the form of a lease, it was a conditional sale and the general ownership of the truck remained in the defendant, and it was not obliged to give title to the "lessee" until all the requirements of the contract, including payment for repairs made within the life of the "lease," had been fulfilled;

(2) The presumption that the giving of a negotiable note is a discharge of the prior indebtedness between the parties may be rebutted, and in the circumstances was rebutted;

(3) Although the "lease" was not mentioned when the new notes were given, the entire transaction showed that the parties gave and received the notes as renewal notes under the contract, so that the repairs were made within the life of the "lease";

(4) The verdict for the defendant properly was ordered.

TORT for conversion of an automobile. Writ in the Central District Court of Worcester dated August 17, 1923.

On removal to the Superior Court, the action was tried before *Greenhalge,* J. Material evidence is stated in the opinion. At the close of the evidence, it was stipulated by counsel that the case might be submitted to the jury for determination of the fair market value of the automobile at the time the defendant repossessed the car. The jury found such value to be $736.36. Then, upon motion by the defendant, the judge ordered a verdict for the defendant and reported the action to this court, with the stipulation that, if it should be determined upon any phase of the case that it should have been submitted to the jury and that the order directing a verdict was wrong, judgment was to be entered for the plaintiff in the sum of $736.36; but if it should be determined that the ordering of the verdict was right, final judgment should be entered for the defendant upon the verdict.

*R. E. Marshall,* for the plaintiff.

*S. M. Salny,* for the defendant.

CARROLL, J. By a written agreement dated July 19, 1919, the defendant leased a motor truck to the S. A. G. Fruit Company, a Massachusetts corporation. Clause one of the lease stipulated: "The lessor hereby leases to the lessee Netco Truck No. 909 for twelve months from date hereof, for the sum of Thirty-seven Hundred Fifty-three dollars,

of which the sum of Seven Hundred Fifty-three dollars has this day been paid on account . . . and the balance shall be paid as follows: In eleven notes of One Hundred Seventy-five dollars each and one note of Ten Hundred Seventy-five dollars." Clause eleven of the lease provided: "If, during the life of this lease, the lessor shall make repairs upon said truck, all bills for such repairs shall immediately fall within the provisions of this lease and must be paid by the lessee before the lessor is obligated to sell said truck to the lessee." Under the second clause of the lease the lessor agreed to sell the truck to the lessee for $1 at the expiration of the lease, "if all the requirements thereof have been fulfilled." By clause three, the lessee agreed to give the lessor "as collateral security, his promissory notes aggregating Three Thousand dollars. . . . Said notes, however, shall not be construed as payment until the lessor receives payment in cash."

All payments were made by the lessee except the last note due July 19, 1920, in the sum of $1,075. By the agreement of the parties "six notes were given for different amounts, totalling the balance then due, and the old note was cancelled." The six notes were finally paid by the lessee, the last note being paid on January 13, 1923. It was uncontradicted that the renewal notes were given " in replacement of the old note and not in payment thereof."

Repairs on the truck were made by the lessor beginning August 11, 1920, which was subsequent to the period of twelve months from the date of the lease but before the payment in full of the renewal notes. The total of the charge from August 11, 1920, to November 24, 1922, was $706.15. Various payments were made by the lessee for these repairs, leaving a balance when the last of the six renewal notes was paid of $317.33.

On April 14, 1922, the lessee mortgaged the truck to the plaintiff. On February 9, 1923, the plaintiff foreclosed the mortgage and took possession of the truck. It was then placed in a public garage, where it remained until April 1, 1923, when the defendant took possession of it. The action is in tort for the conversion of the truck by the defendant. The judge ordered a verdict for the defendant, and reported

the case to this court with the stipulation that if the case should have been submitted to the jury, judgment was to be entered for the plaintiff in the sum of $736.36; but if the action of the court in directing a verdict for the defendant was right, judgment for the defendant was to be entered on the verdict.

Although the contract was in the form of a lease, it was a conditional sale. *Hurnanen* v. *Nicksa*, 228 Mass. 346, 349, 350. *Russell* v. *Martin*, 232 Mass. 379, 382. While there was a special property in the lessee which it could sell or mortgage, the general ownership remained in the defendant and it was not obliged to sell the truck to the lessee until all the requirements of the contract had been fulfilled. *Worcester Morris Plan Co.* v. *Mader*, 236 Mass. 435, 438. One of these conditions was that if repairs were made on the truck "during the life of this lease . . . all bills for such repairs" must be paid before the defendant was required to "sell said truck to the lessee." Under the contract of the parties the amount due for repairs "during the life of this lease," as well as the purchase price, was to be paid before the title passed to the conditional vendee. When the repairs were made the truck had not been paid for, the renewal notes had not been paid, and the lease, as it is called, was still alive. The lessee could not give title to the plaintiff and deprive the defendant of its property in the truck and the right to hold it as its property until it was fully paid for.

The plaintiff contends that the giving of the new notes discharged the debt; that the truck then became the property of the fruit company; and that as the repairs were made after the new notes were given, these repairs were not made during the life of the lease. When the new notes were given, "the old note was cancelled." The uncontradicted evidence was that the new notes were not given in payment, they were given "in replacement of the old note." The presumption of payment was overcome by this evidence. The agreement provided that the original notes were not to be considered as given in payment until the seller "receives payment in cash." The presumption that the giving of a negotiable note is a discharge of the prior indebtedness between the

parties may be rebutted; and the question, whether the transaction resulted in payment, is generally one of fact. See *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73. A presumption stands until the facts are shown. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 378. *Bagnell* v. *Boston Elevated Railway*, 247 Mass. 235, 237. The uncontradicted evidence, in the case before us, was that the so called renewal notes were not given in payment but "in replacement of the old note." The presumption of payment therefore no longer existed. See *Lovell* v. *Williams*, 125 Mass. 439, 441, 442; *Jeffrey* v. *Rosenfeld*, 179 Mass. 506.

When the renewal notes were given, the defendant owned the truck: the vendee was in default. If these notes were given in payment the defendant would be deprived of his title, and it is well settled that the presumption of payment of a preëxisting debt by the giving of a note is met and controlled when it is shown that such a presumption would deprive the creditor of the benefit of his security, and such evidence, it has been held, is sufficient to overcome the presumption. *Lovell* v. *Williams, supra.* *Cotton* v. *Atlas National Bank*, 145 Mass. 43. *O'Conner* v. *Hurley*, 147 Mass. 145. *Jeffrey* v. *Rosenfeld, supra.* *Pugh Brothers Co.* v. *Marano*, 44 R. I. 1.

The lease, as it is called, was for twelve months, but this did not prevent the parties from extending the time; and although the lease was not mentioned when the new notes were given, the entire transaction shows that the parties gave and received the notes as renewal notes under the contract. As there was no evidence to support the plaintiff's contention that the renewal notes were given in payment, and as all the evidence was to the effect that they were not taken in payment, the direction of a verdict for the defendant was right. *Hopedale Machine Co.* v. *Entwistle*, 133 Mass. 443, on which the plaintiff relies, is not in conflict.

*Judgment to be entered for the defendant on the verdict.*