For plaintiff: John J. Mee.
For defendant: Fred Israel.

North Shore
Dye House, Inc.
vs.    Eq. No. 11422.
Harry Krigest

April 20, 1932.

BLODGETT, J. Heard upon motion for a preliminary injunction.

Complainant in this case is engaged in the business of dyeing and cleansing. The corporation was managed by three brothers, Jacob Rosenfield, S. W. Rosenfield and respondent. S. W. Rosenfield and Jacob owned each one-half of the capital stock.

The corporation entered into an agreement with Harry Krigest February 2, 1927, which agreement is part of the record marked Compl't's Ex. 1. This agreement was executed by Jacob I. Rosenfield as treasurer in behalf of the corporation and by respondent. In this agreement respondent, in sub-division (a) of Section 8, agreed for himself, or any other person, firm or corporation, either as owner, agent or employee, not to engage in the business of cleaning or dyeing, or soliciting, collecting and delivering goods to be cleaned or dyed during his period of employment in any of the territories or delivery routes which have been assigned or entrusted to him.

Respondent further agreed in Section 9 of said agreement for a period of one year after the termination thereof, not to work for or be associated with any other company in said dyeing or cleansing business.

Sec. 7 of said agreement provides that either party may terminate same by giving two weeks' written notice to the other party.

Sec. 11 of said agreement provides that the services of the employee may be terminated at any time without notice in case employe has been guilty of negligence, inattention and so forth.

February 24, 1930, the corporation at a meeting of its directors voted that said Jacob I. Rosenfield act as general manager to direct and control the employees of said company. (Respd't's Ex. A.) November 29, 1930, Jacob I. Rosenfield notified respondent that his services as employee were summarily ended and discharged him.

The question that arises upon the present motion for a preliminary injunction is whether the contract between complainant and respondent was terminated at the time of his discharge.

Respondent reported for duty at the plant after his discharge and in January, 1931, re-entered the service of complainant and continued in such employ until August, 1931, at which time he severed his relations with complainant and subsequently, in December, 1931, became an employee of the Pequot Dyeing & Cleansing Co., a competitor of complainant.

In the meantime Jacob I. Rosenfield had sold his interest in said complainant corporation and in December, 1931, being at that time connected with the Pequot Company, had employed respondent for the said Pequot Company. After his employment by the Pequot Company, respondent accompanied by Jacob I. Rosenfield visited three places of business which were carried on by tailors formerly customers of complainant, and solicited business, and also called upon a certain department of the Outlet Co., a corporation carrying on a department store in Providence.

There is no testimony of record as to any particular trade secrets which had been or could be disclosed by respondent, but that respondent did seek to take customers away from complainant. There was no testimony of any unfair means used by respondent to obtain the trade of such customers but simply an effort on his part to obtain such business for his new employer.

If the agreement between complainant and respondent, an agreement under seal, was terminated by the discharge of respondent, any oral agreement between complainant and respondent subsequent to such termination, could not reinstate the original agreement.

*Hopedale Machine Co.* vs. *Entwistle*, 133 Mass. 443.

The damages resulting to complainant, as testified, are nominal, being simply loss of trade without testimony of pecuniary loss. It is difficult to see how any competition in the open market could be called unfair competition where, on the one side, business houses openly operating as such are engaged, and the second party simply contracts with such business houses to do work which they, in the course of business, have undertaken to do, unless the competitor seeking to divert such business uses secret information which he has acquired while in the employ of said second party. Where persons, such as tailors, are openly engaged in such tailoring business, it would seem that the business of such tailors might be solicited by any person, or that there was no secret information that the person could acquire as to such business.

There is such grave doubt in the mind of the Court as to the termination of the original agreement between complainant and respondent, that the Court feels that the motion for a pre-

liminary injunction should be refused until a hearing of the case in full.

Motion for preliminary injunction denied.

For complainant: Max Winograd.

For respondent: Christopher J. Brennan.